IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| TAMMY IRENE ROBERTS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-932-SM |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Tammy Irene Roberts (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 11, 13.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned reverses and remands the Commissioner's final decision.[1] *See* 42 U.S.C. § 405(g).

---

[1] For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination. Page citations to the AR refer to that record's original pagination.

I.   **Administrative determination.**

   A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in [her] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant time period. AR 13-24; *see* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) was severely impaired first, by osteoarthritis of the left hip; second, by osteoarthritis of the right hip; third, by osteoarthritis of the left shoulder; fourth, by osteoarthritis of the right shoulder; fifth, by osteoarthritis of the left foot; and sixth, by obesity;

(2) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[2] (RFC) for light work with some limitations;

(4) was unable to perform any past relevant work;

(5) could perform jobs that exist in significant numbers in the national economy, such as food and beverage order clerk, call-out operator, and document preparer; and, so

(6) had not been under a disability as defined by the Social Security Act since August 1, 2009, through the date of the ALJ's decision, July 13, 2016.

AR 13-24.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

### 2. Appeals Council action.

The Social Security Administration's Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff contends (1) the ALJ violated the treating-physician rule; (2) the ALJ erred in his application of SSR 96-6p[3] to the state-agency medical consultants' opinions; and (3) erred in his credibility analysis. Doc. 16, at 1.

### C. Analysis.

#### 1. Whether the ALJ erred in (a) applying the treating-physician rule and (b) heeding SSR 96-6p.

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to opinions from your treating sources. . . ." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). It explains this is so "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations." *Id.*

Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. At the first step, the ALJ must determine if the opinion "is well-

---

[3] 1996 WL 374180, at *2 (July 2, 1996).

supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to controlling weight, he must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.*

> These factors are:
>
>> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.
>
> *Id.* at 1331 (quotation omitted).

So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### 2. The treating physician's and state medical consultants' opinions.

As the Commissioner frames it, treating physician Dr. Charles R. Shields opined in 2011 that Plaintiff "could not walk 200 feet without stopping to rest, could not walk without an assistive device, and was severely limited in her ability to walk (Tr. 874)." Doc. 20, at 7. Consultative physician Dr. Sidney Williams, who examined Plaintiff, "opined in 2011 that Plaintiff required a cane to walk (Tr. 734)." *Id.* And in 2013, State Agency Medical Consultant Dr. S.A. Chaudry, who also examined Plaintiff, determined Plaintiff "could perform . . . sedentary work with sitting, standing, walking, manipulative, postural, and environmental limitations, and that she needed to use a cane. (Tr. 1269-74)." *Id.* at 8.

Two state-agency reviewing physicians (Drs. Kenneth Wainner and Walter Bell) "opined in 2011 that [Plaintiff] could perform light work with postural limitations (Tr. 743-49, 873)." *Id.* Finally, "[m]edical [e]xpert Dr. [Ollie] Raulston opined in 2014 that she could perform light work with standing, postural, reaching, and environmental limitations, and that she did not need a cane (Tr. 54, 56)." *Id.*

The ALJ concluded Dr. Shields' opinion, which formed part of a handicapped parking placard application, contained limitations "not wholly consistent with the claimant's own report and are given little weight." AR 22.

Apart from this sentence, the ALJ made no reference to the *Krauser* factors. Elsewhere, the ALJ noted he considered the entire record, and he reviewed Dr. Shields' treatment of Plaintiff. *Id*. at 16, 1122.

Dr. Shields treated Plaintiff from September 2011 until early July 2012. Do. 16, at 8 (citing AR 1117-23). Dr. Shields diagnosed Plaintiff with chronic pain syndrome with both somatoform and organic components; low back and bilateral lower extremity pain, which appears to have been a combination of spondylotic pain and secondary myofascial pain in the left greater than the right gluteus minimus anterior, and to the lesser extent gluteus minimus posterior; possible old left S1 radiculopathy that is producing only a decreased ankle reflex and sensory deficit in the lateral foot in the last two digits; bilateral knee pain, which sounds like osteoarthritis; morbid obesity, which she has had since a teenager. AR 1122.

The Commissioner also argues Plaintiff's own reports contradict Dr. Shields' opinion, noting she "exercised by walking three blocks a day," and did not always use an assistive device. Doc. 20, at 9. Elsewhere in the opinion the ALJ summarized Plaintiff's Function Report:

> In the Function Report-Adult, dated March 10, 2011, the claimant reported that she cared for her children, doing whatever was needed, without any help. The claimant stated that she had no problems dressing, caring for her hair or feeding. She stated that she had some difficulty bathing, difficulty shaving her legs, and getting up and down from the toilet. She stated that she did not need any special reminders to take care of personal needs or

8

grooming, or to take medicine. She stated that she prepared meals daily. The claimant did no outside chores, but she did laundry, vacuumed and she washed dishes (Exhibit 3E).

> [T]he claimant reported that she went outside two to three times per day. She stated that she was able to drive a car and go out alone. She stated that she shopped in stores for groceries, but she used the electric carts to get around. The claimant stated that she spent time with others on the telephone daily. She stated that she regularly took her children to school. She stated that she did not need to be reminded to go places (Exhibit 3E).

AR 14. Although not noted by the ALJ, the report also indicates her conditions restrict her ability to lift, bend, walk, and stand. *Id*. at 393-94, 400. She also reported she uses a cane or brace "when she has to walk to[o] far." *Id*. at 399. She testified she can "walk from the door to the car . . . . Any further than that, [she has] to sit down." *Id*. at 82. She testified Dr. Shields prescribed two canes for her in early 2012, and that she uses them "[e]very day." *Id*. at 81. She testified she uses electric carts while shopping and when cooking she sits at the stove with a chair. *Id*. at 84-85. In February 2011, she reported she "tries to exercise by walking about three blocks" a day. *Id*. at 666. Though the ALJ discounted Plaintiff's credibility, he relied on certain statements in her report to discount Dr. Shields' opinion.

### 3. The ALJ's application of the treating-physician rule.

Undoubtedly, the ALJ neglected to state whether Dr. Shields' opinion was entitled to controlling weight before assigning it a relative weight. It

9

appears the ALJ simply jumped to the assessment of relative weight. Doing so constitutes legal error, but if the reasons articulated by the ALJ are sufficient for determining that Dr. Shields' opinion should not be given controlling weight, then the error is harmless. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("[T]he ALJ implicitly declined to give the [treating-physician's] opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating physician's] opinion, we will not reverse on this ground."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). The court will accordingly not reverse the ALJ for failing to discuss whether Dr. Shields' opinion was entitled to controlling weight, as his decision to ascribe the opinion "little weight" shows that he implicitly declined to give it controlling weight.

The court agrees the ALJ may discount medical evidence "if it is internally inconsistent or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)); *see also* 20 C.F.R. §§ 404.1527(c)(3) ("[M]ore weight" will be given to medical source opinions that are supported by relevant evidence.); & 416.927(c)(3) (same). The ALJ here noted no internal

inconsistency between Dr. Shields' assessment and the record as a whole—he merely pointed to an inconsistency with Plaintiff's "own report." AR 22; *see Pisciotta*, 1074 F.3d at 1078; 20 C.F.R. §§ 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); & 416.927(c)(4) (same); *cf. Armijo v. Astrue*, 385 F. App'x 789, 795 (10th Cir. 2010) (holding that ALJ's implicit determination that treating physician's opinion was not entitled to controlling weight was supported by substantial evidence, noting the ALJ pointed out "particular conflicts" between the opinion and "specific record evidence" and "internal inconsistencies" in the opinion); *Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (affirming the ALJ's decision where the ALJ failed to state whether he gave treating physician's opinion controlling weight, holding "any imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight and . . . he had substantial evidence to support that decision").

In discounting Dr. Shields' opinion, the ALJ did not mention Dr. Chaudry's or Dr. Williams' statements that Plaintiff needed to use a cane. Though he gave great weight to Dr. Wainner's and Dr. Raulston's opinions, citing SSR 96-6p's mandate that ALJs must "explain the weight given to these opinions in their decisions," AR 21 (quoting SSR 96-6p), the ALJ failed to report

11

the weight he gave to either Dr. Chaudry's or Dr. Williams' opinions. He identified no "specific, legitimate reasons" for having rejected Dr. Shields' opinion completely, and erred in not assigning weight to the remaining opinions. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). The ALJ's conclusion is not supported by substantial evidence.

The court evaluates the ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). As the Plaintiff points out, the Commissioner's arguments provide post-hoc rationales for the ALJ's decision. Doc. 21, at 2; *see, e.g.*, *Allen v. Barnhart,* 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (holding that district court's "post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process").

The court cannot treat the above treating-physician error as harmless because to do so would ignore the ALJ's duties not only to determine whether to assign a treating-physician's opinion controlling weight, but also to give deference to a treating-physician's opinion even if he does not assign it controlling weight. *See* SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). The exercise of such deference might have changed the relative weight assigned to all the medical opinions, including the non-examining consultants to whose opinion the ALJ assigned great weight. *See* AR 21-22. The ALJ's failure to

12

abide by SSR 96-6p further compounds the treating-physician error. *See Tiger v. Apfel*, No. 97-5134, 1998 WL 166246, at *2 (10th Cir. 1998) (The ALJ's failure to discuss and weigh state agency physician's opinions "violated the requirements of [SSR] 96-6p and undermined the ALJ's ultimate conclusions regarding claimant's alleged [physical] impairments.").[4] The ALJ's decision is not supported by substantial evidence.

## III. Conclusion.

The court REVERSES and REMANDS the Commissioner's decision.

ENTERED this 9th day of May, 2018.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[4] Because these errors may affect the ALJ's credibility determination, the court does not address Plaintiff's credibility challenge. *Watkins,* 350 F.3d at 1299.